You're ready? Yeah. Mhm. Hey, please. The court john Carr representing the appellant in this case, Josephine Adams. For the sake of clarity, I will adopt the terminology used in the brief and refer to Josephine Adams as Mrs Adams and her husband as Dr Adams. Mrs Adams at her trial was prohibited by the district court from presenting the exculpatory and material testimony of her husband, Dr Barton Adams. Although the court failed to apply the correct legal standard to determine whether he was competent to testify and failed to make the necessary record even support the finding that Dr Adams remained incompetent to stand trial at the time of Mrs Adams's trial. The underlying charges, of course, in this case involved the alleged transfer of hundreds of thousands of dollars of health care fraud proceeds. The trial focused on Mrs Adams's knowledge of the health care fraud, her knowledge of the investigation and any actual involvement in the transfer of the fund. This is also was undisputed at trial. Dr Adams had forged Mrs Adams a signature on certain financial documents. We asked the district, we asked that this court vacate the district court's judgment and remand this matter for a new trial. Acknowledging the court's careful attention to the briefs which have been submitted, I would first like to focus on two issues. The first being the timing of the events that happened before Mrs Adams's trial, as well as those issues which do not appear to be in serious dispute by the parties. And the first is that a month before trial before October 14th of 2011 with the trial date of November 14th 2011 30 days before trial, Mrs Adams and Dr Adams were co defendants. And so, of course, Mrs Adams wasn't necessarily, uh, would not have been worried about Dr Adams's presence at her trial because he would have been sitting next to her as a co defendant with a constitutional right to take the stand and testify. However, on October 14th, the court suespante severed the defense. And now I'm sorry, Mr Carr, when you say suespante, could you explain just a little bit what that how that how that occurred? Your Honor, the record reflects that Mrs Adams had previously filed a demand for speedy trial, but the record does not indicate that there was any motion to sever. And instead, the court on October 15th excuse me, October 14th of 2011 entered an order severing the defendants because it is understood that Dr Adams was at Butner being restored to competency. And so the defendants were severed, and the trial with Mrs Adams was to proceed. So the court essentially had a choice between two alternatives at that point. If if he couldn't go to trial, um, the court could either continue the trial for both or do what it did. And that is sever his from hers. Yes, I have to try. Yes, Your Honor. And does the record really tell us why the court made the choice that it did other than the her her insistence on her speedy trial? Right, Your Honor. I do not. I do not believe so. And it's part of the overarching issues with the three legal issues which have been briefed on behalf of Mrs Adams, which is the lack of a record and a lack of an explanation. But she wasn't in custody, right? She was not, Your Honor. To my to my knowledge, are the record does not reflect that she was in custody. Your Honor. And consequently, once the defendants were severed, of course, now Mrs Adams and her counsel have a very different issue, which is that Dr Adams is at Butner, represented by counsel and a challenge to get him back into the courtroom so that he can testify at her trial. And it was undisputed at the time that he wished to testify in her defense that he was willing to waive all constitutional rights and that he was even willing to have his wave all right so that his psychiatrist and his treating physicians could be examined to permit him to testify. And the government did not contest any of that. Your Honor, I do think it's an important point on appeal that at trial for all the three issues which have been briefed on behalf of Mrs Adams, both the denial of the petition, the denial of the motion to continue as well as the denial of the motion for a new trial. The record does not reflect that the government opposed either of those any of those efforts on behalf of Mrs Adams to have her husband transported to the courtroom and testify on her behalf. And actually it is not, I do not believe that the record even reflects that the government said a single word regarding any of those three requests. It wasn't wasn't the real crux of the problem though Dr. Adams counsel's representation to the court that Dr. Adams was essentially in a state where he couldn't rationally understand what his waivers, his own counsel was saying that he didn't have confidence that his waivers could be even understood. Your Honor, I believe that the representations by Dr. Adams's counsel which were made in a motion to quash the petition for the writ were based not upon any observation or communication with Dr. Adams since he had been ordered to Butner more than four months prior for that the insistence that he would that counsel was unable to consult with Dr. Adams was based upon the court's determination back in June of 2011. That document in that order while it's referenced in the record is not part of the record but the the United States has sought to take judicial notice of the order committing him. Okay but when did when did counsel tell the court that he had a delusional belief that renders him incapable of rationally understanding the nature of the proceedings and incapable of communicating with the cooperating counsel? Your Honor, I understand that statement. I apologize, Your Honor. No. When did he make that when did Dr. Adams's lawyer make that statement? Your Honor, the record reflects that Dr. Adams's counsel repeated that finding in the motion to quash but the actual initial representation which led to the commitment order which which was the Dr. Adams's commitment was done sometime prior to June 17, 2011 and actually, Your Honor, we believe that it is it this is certainly indicative that both the court's determination and actually we don't really believe that the record includes a specific finding that he remained incompetent to stand trial at the time of Mrs. Adams's trial and certainly there was no record of no evidence taken in that regard but both the court's statement and denying the motion as well as counsel's statement regarding Dr. Adams's inability to communicate with him were stale in that they are made upon observations that were more than four months old with no evidence in the record that his condition remained that he was incompetent to stand trial or to consult with counsel or incompetent to testify. Do we even know whether counsel for Dr. Adams had visited him in the interim intervening four months? No, Your Honor, the record is silent in that regard and it was somewhat of an interesting issue to try to figure out how that motion to quash was filed in the absence of it would appear and this may just be an electronic issue with Pacer in the absence of him having been a co-defendant it does not appear that counsel would have actually had access to file the the motion electronically actually seeking to quash the subpoena given that but given that he was still a co-defendant or still listed as a co-defendant the motion was filed but there's no evidence in the record, Your Honor, that that counsel had sought to communicate with him at all since he had been committed and it is noted that the four-month observation period had ended by the time that these motions were filed and the petition was filed. There should have been an update on Dr. Adams's condition and that is not included in the record and there really is nothing to support the court's determination that Dr. Adams could not be transported and testified. It is further noted that in the documents which the United States has sought to take judicial notice of that actually it was not a long period of time after Mrs. Adams's trial that Dr. Adams was restored to competency and it would appear ultimately pled guilty to an offense. Do you have it at your fingertips how long actually passed between her conviction and his guilty plea? Your Honor, the record does not reflect his guilty plea but I do understand that the the order returning him, Your Honor, is May of 2012 and June of 2012 and those are the two documents which the United States has sought to take judicial notice of from at that point the underlying health care fraud case which Dr. Adams remained a defendant in. It does not appear from the record that the court ever found that Dr. Adams was incompetent to testify. Obviously, competency under Rule 601 is presumed and it may come to a surprise to many individuals here in the Fourth Circuit under U.S. be likely that even applies to someone who has previously been found incompetent to stand trial and who has also been determined to be clinically insane. That's a matter of credibility and not a matter of competence for the witness to actually testify and the government appears to concede this point in its response at page 19. We probably should have appointed Dr. Adams's counsel as amicus in this appeal. I mean it occurs to me that I sure would like to hear from him. Your Honor, I would state and while it's not in the record, I would represent to the court that actually, I don't mean to talk to myself in third person, but have been taught not to say I in the courtroom, but I have had been in communication with the with counsel for the United States who is in the position now of defending positions which they never took a position on underneath regarding whether Dr. Adams's counsel had a right to intervene or otherwise be a part of this appeal. And so it was something, Your Honor, that counsel had actually considered. It does not appear that there was any question that Dr. Adams was prepared to give exculpatory testimony. That was never questioned by the court. It was not relied upon in denying either the petition, the motion to continue, or the motion for a new trial. And instead the court seems to have focused exclusively on what we believe was a stale determination, unsupported by the facts in the record, that Dr. Adams remained unable and competent to stand trial and to consult with counsel. What was the name of Dr. Adams' attorney? Your Honor, I believe that at least the counsel who represented him on the motion to quash was Benjamin Bryant from Charleston, West Virginia. Was he not counsel at the guilty plea proceeding? Your Honor, the record does not reflect that and I do not know. And while I was certainly responsible for the record in this case, Your Honor, the underlying case has a well over a thousand docket entries and it is not something, given that it was not a part of the record in this case, that counsel's ultimately familiar with. Mr. McWilliams will have all those answers, I'm sure. Your Honor, it really is the case that the court, we think it is clear from the record, that the court's primary focus in dealing with Dr. Adams was to ensure that he could be restored to competency, which was the reason why the hearing was denied. Because the court found transporting him would interfere with efforts to restore him to that he might give a statement which would be later be determined to be involuntary. And we think it is worth noting that, of course, if in fact Dr. Adams' statement was found to be involuntary, the sole remedy for that would be that it would not be admissible against him at a later trial by the United States. But we do not believe that that trumps Mrs. Adams' interest in actually bringing him out of federal custody to the courtroom to testify on her behalf. I see that my time is ended and I will reserve the remainder for rebuttal. Thank you, Mr. Carr. Thank you, Your Honor. Mr. McWilliams? My name is Robert McWilliams, Jr. I'm an assistant U.S. attorney from Wheeling, West Virginia, and I'm here to represent the United States in this case. I'll just begin by saying that, and I don't blame counsel, but if Steve Herndon was the attorney for Dr. Adams, Ben Bryant happened to be a witness. I think Ben Bryant, he represented Dr. Adams in his effort to get his medical license back and he was called for other reasons as a witness in the trial. Members of the court, the defense and I disagree wholeheartedly on what the standard is for competency under the facts of this case. To me, it's not debatable or the U.S. Supreme Court case Godinez, cited by the United States, controls. When a defendant is incompetent to waive his Fifth or Sixth Amendment rights, then he can't testify. Even if he's a lunatic, he can't testify. They have cited the Lightly case. In Lightly, the witness was a former defendant who had been found incompetent to stand trial and had been found criminally insane. So the witness in Lightly had no exposure to criminal activity. So he had no Fifth or Sixth Amendment right to waive. So the Lightly standard applies when the witness to be called is not a defendant who has those rights. And the court asked counsel, why didn't the judge ask for our input? I don't know, but I think it's because Judge Bailey knew that it didn't matter what we would say. Well, let's back up for a moment. Where in the record is the finding, as of the time of Mrs. Adams's trial, that Dr. Adams was then incompetent to waive his Fifth Amendment rights and testify on her behalf? Point me in the record where that finding is in the record. That would be on November 7th, pre-trial conference, seven days before the trial began, Joint Appendix 162. The court there is obviously, despite the brief of the defense that said he made no findings of fact or conclusions of law, he most certainly did. The judge at page 162 said that, and it's recent report that he has, and he says that he has a delusional belief system. I'm sorry, what line are you reading on? I'm looking at Joint Appendix 162. There's a delusional belief system, cannot rationally understand the proceedings, that's another factual finding. I'm sorry, what line are you looking at? You're talking about line 10? Line 10, okay. Yeah, I have it, thank you. And you say it's obvious he's referring to a recent report. Not a recent report. Well, that's, see, that's the problem that I'm having. What is the basis for the district court's finding on page 162 of the Joint Appendix that at the time of that he still had, he, Dr. Adams still suffered from delusional hallucinations and so on. The basis for that, your honor, can be gleaned from 18 U.S.C. section 42. No, no, I'm talking about where is the evidence in the record that supports the district court's finding on that day regarding Dr. Adams's condition. I understand you weren't a part of this, right? So you're in a very difficult position here. Well, I appreciate that, but I don't think it's that difficult because under the competency statute, when a person, when a defendant regains competency, the director of the facility, which is usually the warden, must, quote, promptly notify the clerk of the court and the clerk must notify counsel. So the absence of any discussion, I'm hearing a week before trial. So you're relying on the absence of evidence. Absolutely. Now, wouldn't it be nice if the judge said, I checked with the clerk this morning and the certification isn't in, but are we to believe that the government counsel had received the certification and he's competent? Are we to believe that the defense, Mr. Adams? I only believe what I see in the record. That's easy for me to answer. I want to see evidence in the record. That's what my oath requires of me as a judge, reviewing a record. What's in the record? And we have made a motion to ask the court to take judicial notice of public records, which will reveal when he was found competent. What's in the record is that nobody spoke up and said, oh, by the way, I have this certification. He's competent today. Nobody spoke up at the end of the trial. The clerk didn't turn around to the judge and say, by the way, judge, that certification just came in. He's competent. So the fact that it's not in the record. Do we even know whether his rationally evaluate the motion to quash in the absence of any evidence of what the lawyer was basing the motion to quash on? I think it's because the judge knew he hadn't received that certification, saying that the Dr. Adams had regained his competency. Doesn't it come down to really, Mr. McWilliams, to whether the, it really looks like what the court did was it assumed, you know, it was in front of him telling him about the problems. It just assumed that the situation hadn't changed. The court hadn't been notified. It assumed that the situation hadn't been changed. And is that a proper exercise of discretion to assume, well, I, you know, and I understand Judge Bailey's position. You know, he's got all these cases and he knows this, that Dr. Adams has a big problem. He knows that he's in Butner and he knows he hasn't heard anything and he's got to make a decision in this case. And so it seemed reasonable for him to assume that there's still a problem with Dr. Adams. But is that a proper exercise of discretion? I think under the facts of this case it is, because if for no other reason the court could decide this case on the fact that Dr. Adams was an incompetent witness for another reason. When Dr. Adams wrote to the court, as he did many, many times, he said that I want to come and testify, but I will not be cross-examined by my wife's lawyer. Then he's not a competent witness, because no witness can decide who's going to examine them. He wouldn't have to be cross-examined by his wife's lawyer if he's his wife's witness. That would be a direct examination. If he were, if he were there, I imagine the government would have called him in its case-in-chief. But, but regardless of that, let's assume that the defense called Dr. Adams and the government tries to get things out on cross from Dr. Adams that are beyond the scope. Well, he wouldn't have to waive his Fifth Amendment privilege on the government's case-in-chief. He could wait until the government rested and waive his Fifth Amendment privilege. That's true. Absolutely true. But he, now he is sitting in the courtroom doesn't mean the government gets to put him on the stand. Whether he testified in direct or in the government's rebuttal case, he still may be examined by Mrs. Adams' lawyer. And so when he says, I won't be examined by her, for that reason alone, he fails the, we agree on what we call the the clinger test, by standards. How did that make you delusional? I mean, if you don't understand the law, as many people don't, who are not lawyers, how does that equate to your insane? He was, now he was, I haven't read the medical report, but based on the findings, the fact that were made, he couldn't cooperate with this council. It was a delusional belief system. Cannot rationally understand the proceedings. Incapable. Now, the court had that present, is this a fair statement of your position, that counsel at page 161 was making a present representation to the court? Oh, I believe so. I mean, I'm sure that Mr. Herndon was in email contact with Dr. Adams. So, on the first issue, we disagree on the test, and I don't, I really don't think it's debatable as to whether Lightly applies or Godinez plays. The judge made the only decision he could make under the Godinez case. I'm not sure I follow that. Did the government oppose the motion to continue the trial or remain silent? Remain silent. Remain silent. You did not oppose the motion? Did not oppose it, did not argue for it. I, again, I think Judge Bailey made the only decision he could make at that time. He certainly made a reasonable decision. When you talk about abusive discretion... You think it would have violated her right to a speedy trial if he had continued the trial for a reasonable period of time to see if competency could be restored to what is, after all, I think everybody agrees, he's her, he's her absolute best witness. I mean, he can exonerate her, right? I'm only smiling because my experience has been when defendants take the stand, they're probably going to lie and that's what, that's what convicts them. If it's close and... But, but, but, I guess he pled guilty. He pled guilty. Now, we don't know when he decided to plead guilty. And by the way, I have a copy of the plea agreement, although I don't have the facts supporting the guilty plea. Was that not reduced to writing when he pled guilty? I'm sure it was. But it's not a part of the plea agreement? Is that the way that... I'm sorry. In other words, I have Dr. Adams' plea agreement. All right. From the district court record, but it does not contain a statement of facts. We don't do that. We don't do that. We call the case agent who lays a factual basis. Okay. And so, one of the reasons I was interested in the statement of facts was to see whether the statement of facts agreed to by Dr. Adams and the government either, you know, hemmed her in to a story or provided an avenue of exculpation. But I don't have that. Were you there? No. You weren't there either? No. So we don't know what the statement of facts in support of the guilty plea offered at the time of Dr. Adams' guilty plea is. We don't know that right now. Is there a transcript available? Is that encompassed by your motion to take judicial notice? No. Judicial notice talks about the orders that will show you when the warden certified him as competent and when the court found him incompetent. What was the difference of the day he was represented to be incompetent? I don't think counsel could probably make that conclusion. That's a medical conclusion. But when was he cured? How soon after was he already cured and they didn't know it? The certification came in two months later and after five months of litigation. Two months after the end of her trial. Yes. And then after five months of litigation by his counsel trying to say he's still incompetent, the court found him competent, which would be about seven or eight months after her trial was over. Over the lawyer's insistence of his trial was that the court found him competent. Yes. Oh, I see. But when he was trying to assist his wife in her trial, the lawyer's words were golden. No, because the judge was relying on the report from the psychiatrist at Butner. You don't even know what the report was because you're surmising it was a report because it's not in the record. What he was Is the report the record? Yeah, exactly. So like I said, the lawyer's word was golden. Then it was it was insurmountable when a woman or person is facing loss of liberty, which is one of the highest protections our Constitution gives in terms of Sixth Amendment rights. And that's a different question because compulsory attendance of witnesses is ensconced in our Constitution, which is a little different than whether or not someone's taking a fifth in their action. The government has a burden to compel people to testify, correct? That's correct, but I don't. And when that person is jumping from the rafters saying, I want to testify, I want to waive my fifth, this case is very troubling in that effect. And then they, then two months later, they're cured. And the lawyer is saying the same thing. Well, I don't think the judge was relying solely on Mr. Herndon's statements. He's relying on the fact that he has a psychiatric report from June saying he has this delusional belief system. He's not competent to understand what's going on. And so the judge is relying on that when he finds he has no So you are now agreeing, not that you didn't before, that the most recent medical evidence that the judge could possibly have had access to on November 7th, 2011, when you pointed me to page 162 of the Joint Appendix, that the most recent medical report would would be June of 2011. That's my understanding. So you were not exactly correct when you said a few minutes ago that it's obvious that the judge was relying on a medical record at that time that was more contemporaneous. No, I didn't mean to suggest that. I'm just saying that in November, when the judge makes his findings a fact, he's relying on that report that led him to his June conclusion. Get back to Judge Keenan's question then, it seems to me. Was it an abuse of discretion for the judge to act on what counsel calls a stale medical record, five months old, to deny a witness of this importance to a criminal defendant charged with a felony in federal district court? I mean, that's sort of what it comes down to. And I agree. We all appreciate the position that Judge Bailey is in. I certainly do. He's got to manage his docket. He's got, who knows how long it's going to take the good folks at Butner to restore competency to Dr. Adams. He's got a defendant, number two, who's insisting on a speedy trial. So look, that's why they pay the district judges the big money, right, to make these kinds of calls. But at the end of the day, we're looking at it and we're thinking, well, wait a minute. Why not continue the trial for a few weeks, bring the guy up to to the courtroom, put him on the witness stand, and see for himself whether the guy is competent to waive his rights and testify on behalf of his client. Could the judge have done that? Yes. Did the judge abuse his discretion in not doing it? No. And here's why. Okay. Because on the morning of trial, what we knew is that Mrs. Adams says, I have a witness, my husband, who says he will exculpate me. That was the extent of the detail. And that he may or may not be available at some time in the future. And even if he is, he won't be examined by my attorney. Those are the facts. And I can't fathom how this court would could would fathom a ruling that would say a judge has went on the morning of trial, the defense is looking for a witness that may or may not ever be available. And even if he is, because the ironic thing is, when he regains his competency, he may tell Mr. Hearn that I finally understand why you say that I shouldn't testify in my wife's case. My testimony will kill her. And I won't testify. So there was no way for Judge Bailey to know at all if and when this witness would ever be available. And so in that sense, and in every sense, it was not an abuse of discretion with what Judge Bailey faced. Well, I appreciate that. And I think that's a perfectly sensible and, frankly, excellent argument. Except, here's my problem. The judge never saw him. The judge never actually brought him into the courtroom and heard what he had to say. Instead, the and denied her the opportunity to call a very important witness. Well, I can't rejudge Bailey's mind. But in my mind, he knows that because there's no certification back, that means he's still not competent because the statute doesn't know that. Well, infer that he can infer that that's what the statute requires. The competency statute that the court be promptly notified once he's regained competence. I understand. And let me at least let me touch upon the Womack case. That's the case that said that just because the defendant or witness was incompetent a month ago doesn't mean they're incompetent now. But Womack was decided in 1976. In 1984 is when the present competency statute was passed that says that the warden must promptly notify the court. You keep saying that, and I appreciate that. And yeah, it'd be great if government bureaucrats did everything they're supposed to do exactly when they were supposed to. But we know that's not true. You're asking us to draw an inference on the basis of words in a statute that I'm not sure I'm prepared to do that. Well, I understand the prompt, etc. But, you know, I've been a district judge. I know when those reports come in, I have a sense of how busy those doctors are and those stenographers. Well, this is another reason why we believe that our motion to get judicial notice of public records, which would show the date of the certification and the date that he was finally ruled competent, would show. I would hate to have this court decide something on facts that didn't exist. The fact is that what he had before him was that on the day he denied the writ to have him come testify, he had never received any notice that he had regained competency. That's what he had before him. And based on that, it was not an abuse of power to deny the writ. But the problem is that the question is so important in the Sixth Amendment compulsory attendance of a witness. It's an existential question. You know, you know, it's not eschatological in terms of the end roll and about what's going to happen to his case. It's existential because the question is, at the present time right now, tell me why the government is not required to compulsory attendance of this witness, particularly one who wants to testify for me. It requires more than just perhaps a four or five month old report or a lawyer saying that. But instead, it almost is a, I would think it's almost a voir dire right. Say, well if that's the case, I want him to come here and you see whether or not he's delusional. Because it's existential. It's the existence of the right now, not what may have been four months ago or, and we find out two months later, he's cured. Cured to everybody's satisfaction, enough that he can enter an agreement and plead guilty. But then you have a person climb and saying, I have an actual innocence claim, a witness. Isn't that troubling to you in a sense? I'm not talking about being, it's not about the district court judge and blaming anyone, but it's about the process of justice. And that is, isn't that troubling in a sense? It isn't for me under the facts of this case because you have the proffer, and again we have to go by the case law, the Klinger case, the proffer was that he'll exculpate me. He'll testify that I didn't conspire. There were no detailed facts as to what he would say. It was corroborated by the witness. I'm sorry? He said that's what he was going to do and wanted to do in spite of the risk. That doesn't sound delusional at all. It sounds like someone who's very clear. They have the highest relationship that exists between persons in our country, legally. Legally, his spouse. That doesn't seem delusional at all. He said, no, I can represent and testify to assist my wife in telling the truth. That doesn't sound delusional. He's not saying, well you know, I can come there and tell you why the spaceship came down and it wasn't quite reasonable. They were co-defendants together. He was aware of the case, but then two months later, he's become, you know, kumbaya, everything is fine. That was to the government's interest at the point you got it down in pen and ink. That's an interesting and a very troubling question, I think. Well, I think, again, the judge didn't abuse his discretion under the facts of this case because there was no showing as to when or whether or if he would ever be available as a witness. They even asked for an indefinite continuance. That's a very fair argument, I think. Why didn't the government weigh in on this? Number one, they weren't asked. And number two, I think Judge Bailey knew exactly what the law was. He knew what was right. I'm trying to get into Judge Bailey's head, and I respect your answer. Number one, you weren't asked. And number two, I think the judge... And what's number three? I don't think so. Because the government gets into a lot of things that where it's not asked. Well... And I don't mean to diminish your answer. That's a fair answer. That's a fair answer. I've learned when you're winning, it's sometime best to remain silent, and so I can't speak for Mr. Stein, who is the trial counsel. That's fair. But I think he could probably see that the judge was making, really, the only decision he could make, and they didn't ask him to talk him out of it. That's fair. That's fair. All right. Thank you. Mr. Carr, you have a few moments reserved. Yes, Your Honor, and I would clarify and apologize to Judge Keenan. It was, in fact, Steve Herndon who was Dr. Adams' counsel. Ben Bryant was called to testify regarding his prior relationship with him, and I apologize for that misstatement. Mr. Carr, why isn't the court entitled to accept the present representation of counsel? Not that, specifically, as to his psychiatric state, but saying that, based on my conversations with him, I can't communicate. He and I are not communicating as attorney and court, that he knows what he's waiving. Why isn't that good enough? Your Honor, I do not believe that the district court relied solely upon that representation by his counsel, and there is nothing in the record indicating the number of times that counsel had communicated with Dr. Adams. He certainly is not a doctor. He only says, my reading of the record is that his only representation concerning whether he had been in contact with Dr. Adams is that as as late as last night, and I believe he actually said maybe last evening, he wants to testify for Mrs. Adams and his testimony will be exculpatory for her. However, I'm sorry, and that is the extent of his communication. It appears that the motion to quash is instead based solely upon the prior order, and while counsel states that he's sure that they were in email communication, that certainly is not reflected in the record. There is no evidence that counsel was actually in regular or sufficient enough contact for counsel, independent of that initial order, to state five months after the fact that Dr. Adams remained incompetent to stand trial. Well, no, and what he's saying is it's his position. It is the position of counsel that he's not capable of rationally consulting with counsel in arriving at a decision. So not necessarily that he's just psychiatrically incompetent, but that his situation is such that as his lawyer, I have to tell you as an officer of the court, he and I cannot make that connection where I can be confident in telling the court he knows what he's doing. Your Honor, that is certainly the conclusion that counsel states to the court, the representation that is made, but there were no findings of fact in that regard. Counsel was not able to be cross-examined, and that was because the court refused to hold a hearing, and we believe that this certificate that is referred to by the government is not dispositive. As the court points out, the mere fact that the order stated that they should convey that certificate to the court once Dr. Adams found incompetent does not mean that on November 7th, had the court said, bring the psychiatrist, bring the doctor, we want to see if he's competent, that the determination would not have been made at that time that Dr. Adams was competent to testify. And if I can say, and I think this is a very important point given the discussion that just occurred, in Mrs. Adams's motion to continue, she waived all speedy trial rights with the exception of being tried within 30 days of an indictment. There was no issue with the court maintaining the speedy trial rights. In the motion to continue. I'm sorry, explain that please, because frankly, I thought I would hear a lot about the speedy trial issue from the government, but it didn't even come up. Your Honor, in the motion to continue, once again, I realize it was right before trial, but we are talking about a very compressed timeline of when the motion was, when the severance was entered, the petition was denied, they filed a motion to continue, and in the motion to continue, Mrs. Adams filed a with the exception of being tried within 30 days if there was a new indictment. So there was not a... So this was after the superseding indictment? Yes, Your Honor. I see, so when you refer, so unless there's a new indictment, meant a second superseding indictment. Unless there was a second superseding indictment. And I believe, Your Honor, there's actually some question under the case law whether that applies to a superseding indictment or not, but the issue is, is for the purposes of her going to trial, she had waived speedy trial rights. That was no My husband, President, is so important to my case, I do not want to be tried unless he can be there either beside me as a co-defendant or brought to testify on my behalf. And Your Honor, we do believe that... I guess that's why I didn't hear from the government about speedy trial. Your Honor, we do think that it is very important to consider the circumstantial nature of the case against Mrs. Adams. This is referred to in the brief. And I think that that is most evident when you read the closing argument of the government. There was, it was completely a circumstantial evidence case. She must have closed the accounts. She must have been told by Dr. Adams about the ongoing investigation. She must have had knowledge. And yet, there was no direct evidence of that. And it would have been of critical importance to have Dr. Adams present to testify. Do you have access to the factual basis for his plea? Your Honor, to the extent that it would be available on PACER, perhaps. I otherwise do not have it. And it does bring up the point, though, sir, about what happened. And you haven't seen it as of today. I have not, Your Honor. And the way that this case progressed, of course, the underlying case, the 308 case, was the underlying health care fraud. The 311 case that Mrs. Adams was convicted of was the obstruction for moving the money offshore. Well, the cases were severed. Mrs. Adams gets convicted without her husband being able to testify about the transfer of the money. Then that case is dismissed with prejudice against Dr. Adams. At which point, the government goes back on the original health care fraud case after Dr. Adams is restored to competency. And in effect, gets him to plead guilty to it. And so, that doesn't help Mrs. Adams, though, to the extent. She literally just repeatedly said during her cross-examination, when on the stand, how were the accounts closed? I don't know. And the evidence in the record is clear from Dr. Adams. He said his wife was innocent. He wanted to come testify, and he could explain the when, why and where as to why she was actually innocent of all of the charges in the 16 count supersede indictment against her. Isn't that enough for the defendant to simply say he will exculpate me? I mean, that's a legal conclusion. Is that sufficient? Your I would just point out even his counsel made clear that he would provide exculpatory testimony for Mrs Adams and Mrs Adams was in a very difficult position because with Dr Adams represented by counsel at Butner, her counsel couldn't get a proffer from him because his counsel against his wishes was not going to allow him to be brought to court to testify. Or for that matter, it would appear in the record to be interviewed. And so Mrs Adams doesn't have. Counsel doesn't have the ability to actually get a detailed proffer from him because he is represented. All right. Thank you very much, sir. Mr Car. We know that you're caught upon it. We want to give a special thanks to you. Appreciate you taking cases like this, and we couldn't do our job without your help. We appreciate it very much. Miss McWilliams. Obviously, we also appreciate your able representation of the government will come down Greek Council and then proceed to our final case for the turn.
judges: Roger L. Gregory, Barbara Milano Keenan, Andre M. Davis